# UNITED STATES DISTRICT COURT
for the
District of Columbia

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

APPROXIMATELY 8,000 PIECES OF U.S. MAIL STORED AT THE UNITED STATES POSTAL INSPECTION SERVICE FACILITY AT 450 5th STREET NW, WASHINGTON DC, UNDER RULE 41

)
)
)  Case No. 21-sw-234
)
)
)

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A hereby incorporated as reference

located in the _____ District of Columbia, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B hereby incorporated as reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 1341 and 1342 | mail fraud, fictitious name or address |
| 18 U.S.C. § 1343, 1349 | conspiracy to commit mail fraud |

The application is based on these facts:
SEE AFFIDAVIT

☐ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Nichole Rodriguez*

*Applicant's signature*

Nichole Rodriguez, Postal Inspector
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by TELEPHONE *(specify reliable electronic means)*.

Date: 07/22/2021

*Judge's signature*

City and state: Washington, D.C.         G. Michael Harvey, U.S. Magistrate Judge
*Printed name and title*

AO 93C (08/18) Warrant by Telephone or Other Reliable Electronic Means ☐ Original  ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
for the
District of Columbia

In the Matter of the Search of  )
*(Briefly describe the property to be searched*  )
*or identify the person by name and address)*  )
APPROXIMATELY 8,000 PIECES OF U.S. MAIL STORED AT ) Case No. 21-sw-234
THE UNITED STATES POSTAL INSPECTION SERVICE )
FACILITY AT 450 5th STREET NW, WASHINGTON DC, )
UNDER RULE 41 )
)

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of Columbia
*(identify the person or describe the property to be searched and give its location)*:
See Attachment A hereby incorporated as reference

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:
See Attachment B hereby incorporated as reference

**YOU ARE COMMANDED** to execute this warrant on or before   August 5, 2021   *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to   G. Michael Harvey, U.S. Magistrate Judge  .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:   07/22/2021
*Judge's signature*

City and state:   Washington, D.C.   G. Michael Harvey, U.S. Magistrate Judge
*Printed name and title*

AO 93C (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| **Return** ||| 
|---|---|---|
| Case No.:<br>21-sw-234 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : |||
| Inventory of the property taken and name(s) of any person(s) seized: |||

| **Certification** |
|---|
|     I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.<br><br>Date: _____<br><br>                                                              *Executing officer's signature*<br><br>                                                              *Printed name and title* |

## ATTACHMENT A

### Property to Be Searched

The **SUBJECT PARCELS** are approximately 8,000 pieces of United States Mail that are currently located at USPIS, 450 5th Street NW, Washington, DC 20004.  All of the **SUBJECT PARCELS** are addressed to or have the return address of one of the following:

| | | | | |
|---|---|---|---|---|
| a | PO Box 610704 | Bayside | NY | 11360 |
| b | PO Box 639 | Bethpage | NY | 11714 |
| c | PO Box 156 | Carle Place | NY | 11514 |
| d | PO Box 354 | Carle Place | NY | 11514 |
| e | PO Box 12128 | Hauppauge | NY | 11788 |
| f | PO Box 8035 | Huntington Station | NY | 11746 |
| g | PO Box 1537 | Mineola | NY | 11501 |
| h | PO Box 211 | Old Bethpage | NY | 11804 |
| i | PO Box 559 | Old Bethpage | NY | 11804 |
| j | PO Box 9218 | Old Bethpage | NY | 11804 |
| k | PO Box 27 | Plainview | NY | 11803 |
| l | PO Box 401 | Roslyn | NY | 11576 |
| m | PO Box 1335 | Roslyn Heights | NY | 11577 |
| n | PO Box 1367 | Roslyn Heights | NY | 11577 |
| o | PO Box 1428 | Smithtown | NY | 11787 |
| p | PO Box 535 | Westbury | NY | 11590 |
| q | PO Box 781 | Westbury | NY | 11590 |
| r | PO Box 570420 | Whitestone | NY | 11357 |

# ATTACHMENT B

## Particular Things to be Seized

Items evidencing violations of Title 18, U.S.C. Sections 1341 (mail fraud), 1342 (fictitious name or address), and 1349 (conspiracy to commit mail fraud), including but not limited to the following:

1. Whole or partial sweepstakes, lottery, or other prize award solicitations requesting payment of a fee;

2. Notes, correspondence, and other records in whatever form;

3. Payment instruments or payment information, including cash, checks, money orders, and credit card information;

4. Communications and records that may establish ownership and control (or the degree thereof) of post office boxes.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF APPROXIMATELY 8,000 PIECES OF U.S. MAIL STORED AT THE UNITED STATES POSTAL INSPECTION SERVICE FACILITY AT 450 5th STREET NW, WASHINGTON DC, UNDER RULE 41 | SW No.  21-sw-234 |

### AGENT AFFIDAVIT IN SUPPORT OF APPLICATION FOR A SEARCH WARRANT FOR U.S. MAIL PARCELS

Your Affiant, Nichole Rodriguez, United States Postal Inspector, being duly sworn, hereby deposes and states as follows:

### INTRODUCTION

1. I have been a Postal Inspector with the United States Postal Inspection Service ("USPIS") for approximately nine years. I am currently assigned to the USPIS Department of Justice Mail Fraud Team in Washington, D.C. I have participated in and conducted numerous investigations involving violations of 18 U.S.C. § 1341 (mail fraud), 18 U.S.C. § 1342 (fraud using fictitious names), 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 1349 (conspiracy to commit mail and wire fraud), and related statutes.

2. As a Postal Inspector, I have received training, and have experience, regarding the use of the U.S. mail and Post Office ("P.O.") boxes in connection with fraud offenses. I have conducted numerous fraud investigations and participated in numerous search warrant executions

2

involving use of the mail. Based on my training and experience, I am familiar with the types of documents typically delivered to P.O. boxes to manage and operate a mail fraud scheme.

3. The facts contained in this affidavit are based on my personal knowledge, knowledge obtained during my participation in this investigation, information from other individuals including other law enforcement officers, complainants, and other parties, witness interviews, and my review of documents, public records, USPIS records, and other sources. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I have learned during the course of this investigation.

4. This is an Affidavit submitted in support of an Application for a Search Warrant to open and search approximately 8,000 pieces of unopened U.S. mail, hereinafter "**SUBJECT PARCELS**." The **SUBJECT PARCELS** are currently in USPIS custody in Washington, D.C. The **SUBJECT PARCELS** were seized by the USPIS pursuant to a Temporary Restraining Order And Order to Show Cause ("TRO") signed by the Honorable Judge Sandra J. Feuerstein on or about September 22, 2016 in Eastern District of New York ("EDNY") case no 16-cv-5263. That case was filed under the Anti-Fraud Injunction Statute, 18 U.S.C. § 1345, to stop an ongoing mass-mail fraud scheme. Two of the defendants in that case are SEAN NOVIS ("NOVIS") and GARY DENKBERG ("DENKBERG'). Judge Feuerstein considered the United States's ex parte application for the TRO, and found that (1) there was probable cause to believe that the defendants were violating and about to violate 18 U.S.C. § 1341, and (2) the statutory conditions for granting a temporary restraining order under 18 U.S.C. § 1345 had been met. On

or about February 23, 2017, a stipulated Preliminary Injunction was filed, which was then granted on April 19, 2017 by Judge Feuerstein and remains in place.

5. Under the EDNY TRO discussed above, the U.S. Postal Service was authorized to detain all of NOVIS and DENKBERG's mail sent in furtherance of the fraudulent schemes described herein. These detained and unopened mail pieces, i.e., the **SUBJECT PARCELS,** are the subject of the search warrant application for which this Affidavit provides support.

6. In connection with the matters alleged here, NOVIS, DENKBERG and their co-conspirators caused fraudulent prize notices to be placed into the United States mail, which were to be delivered to potential victims throughout the United States. NOVIS, DENKBERG and their co-conspirators also received payments, other correspondence, and returned prize notices via U.S. mail, in response to their fraudulent prize notices. Mail inbound to NOVIS, DENKBERG, and their co-conspirators went to a number of P.O. boxes under their control, including:

| a | P.O. Box 610704 | Bayside | NY | 11360 |
|---|---|---|---|---|
| b | PO Box 639 | Bethpage | NY | 11714 |
| c | PO Box 156 | Carle Place | NY | 11514 |
| d | PO Box 354 | Carle Place | NY | 11514 |
| e | PO Box 12128 | Hauppauge | NY | 11788 |
| f | PO Box 8035 | Huntington Station | NY | 11746 |
| g | PO Box 1537 | Mineola | NY | 11501 |
| h | PO Box 211 | Old Bethpage | NY | 11804 |
| i | PO Box 559 | Old Bethpage | NY | 11804 |
| j | PO Box 9218 | Old Bethpage | NY | 11804 |
| k | PO Box 27 | Plainview | NY | 11803 |
| l | PO Box 401 | Roslyn | NY | 11576 |
| m | PO Box 1335 | Roslyn Heights | NY | 11577 |

| n | PO Box 1367   | Roslyn Heights | NY | 11577 |
|---|---------------|----------------|----|-------|
| o | PO Box 1428   | Smithtown      | NY | 11787 |
| p | PO Box 535    | Westbury       | NY | 11590 |
| q | PO Box 781    | Westbury       | NY | 11590 |
| r | PO Box 570420 | Whitestone     | NY | 11357 |

## Other Government Actions

7. In or about April 2012, NOVIS and DENKBERG each signed agreements with the United States Postal Service pursuant to 39 U.S.C. § 3005, whereby NOVIS and DENKBERG agreed to permanently stop sending fraudulent prize notices. Despite the agreements and resulting cease-and-desist orders, NOVIS and DENKBERG continued sending fraudulent prize notices.

8. In or about August 2020, a grand jury in EDNY returned an indictment charging NOVIS and DENKBERG with one count of conspiracy to commit mail fraud in violation of 18 U.S.C. § 1349, six counts of mail fraud in violation of 18 U.S.C. § 1341, and four counts of wire fraud in violation of 18 U.S.C. § 1343. *United States v. Novis and Denkberg*, Case No. 2:20-cr-00335-JMA-2. This case is ongoing.

## PROBABLE CAUSE

### Background

9. From at least 2012 to September 2016, NOVIS, DENKBERG, and their co-conspirators used the United States mail to engage in a predatory mail fraud scheme, targeting primarily elderly and vulnerable victims. NOVIS and DENKBERG directed and controlled the business operations of Horizon Marketing Services Inc., Quantum Marketing Inc., DMCS Inc., and Direct Marketing Consulting Services Inc. to further the fraud scheme. From at least 2012

through September 2016, NOVIS, DENKBERG, and their co-conspirators defrauded tens of thousands of victims throughout the United States of approximately $30.4 million.

10. NOVIS, DENKBERG, and their co-conspirators caused mass mailings of solicitations to be sent to potential victims through the United States mail designed to induce those potential victims to send payments to NOVIS, DENKBERG and the co-conspirators. In the course of this investigation, I have reviewed numerous solicitations mailed to victims from the business entities controlled by NOVIS, DENKBERG, and their co-conspirators. These solicitations were written to give the impression they were personalized letters, notifying the recipient that he or she had already won a large monetary prize, typically worth more than $1 million. The solicitations requested the recipient to return an enclosed form along with a required fee, generally in the range of $19.99 to $39.99, to receive the prize.

11. In reality, the solicitations were not personalized letters, but were mass mailings, sent to thousands of potential victims throughout the United States. The letters differ only in the potential victims' names, addresses, and identifications numbers caused to be assigned by NOVIS, DENKBERG, and their co-conspirators, inserted into the form letters through mail merge software.

12. Victims who paid the required fee and responded to the award solicitations did not receive the promised substantial monetary prizes. Some victims received nothing at all, but the others received a small booklet describing a small number of commercial sweepstakes, which could be entered without cost by members of the general public.

13. Though NOVIS, DENKBERG, and their co-conspirators sent multiple different versions of these fraudulent award solicitations, the solicitations featured common phrases, styles, and misrepresentations to give the impression the recipient had been selected as a winner of a large prize. The letters prominently featured the amount the recipient purportedly won, highlighting the prizes with large fonts, punctuation, and underlined and bolded text.

14. Evidence seized from NOVIS and DENKBERG's operation shows that victims were deceived by the award solicitations. A large quantity of victim complaint letters were seized during the execution of the search warrant on their offices in September 2016. Many of them were from elderly victims, often identifiable through their shaky, labored handwriting, who expressed in their letters their bewilderment and frustration that they had not received the promised winnings after paying the requested fee.

15. An example of the prize-notice mailings sent by NOVIS and DENKBERG is attached hereto as Exhibit 1. In this mailing, the recipient is told that the sender "is thrilled to announce that Your Name has been Identified from a list of thousands of sweepstakes participants to receive this Notification of Available Awards advising that You are entitled to receive ***$1,200,000.00 in Cash and Awards***." Immediately after the second set of asterisks setting off the underlined, purported prize amount is the following text: "Win-Opportunities as Reported in Digest of Entrant Procedure Directives now pending release to you fully!" Concerning the first quoted sentence, the investigation reveals that NOVIS and DENKBERG sent these prize notice mailings to victims solely because their name was on a list

that NOVIS and DENKBERG acquired from a mailing list broker—it is not true that the recipients were identified by virtue of having entered a sweepstakes.

16.     Concerning the second quoted sentence, NOVIS and DENKBERG have used attorneys to review their prize-notice solicitations. In the criminal case charged in EDNY, in February 2021 NOVIS and DENKBERG invoked the defense of advice of counsel and, accordingly, have waived attorney-client privilege. I have reviewed a number of communications between NOVIS, DENKBERG, and their attorneys—language such as "win-opportunities" and "digest of entrant procedure directives" is often inserted in the prize-notice mailings in the course of these communications in order to soften the impression that the recipient has already won a prize and conceal that what the victim is actually buying is a short booklet of publicly available sweepstakes information. Despite this added language, many victims continued to complain to NOVIS and DENKBERG's companies about the failure to provide the promised monetary prizes. NOVIS and DENKBERG's former business partner, J.S., recently stated in an interview that the primary motivation for these attorney reviews was to avoid the fate that befell NOVIS's father a number of years ago—he was imprisoned for his role in a similar mass-mailing fraud scheme. J.S. said they operated their business in relatively constant fear of federal law enforcement, because they would hear from time to time about federal actions against other mass-mailers. He also stated that he, NOVIS, and DENKBERG would often argue against changes recommended by the attorneys, because making the mailings less "aggressive" would substantially reduce their profits. In other words, J.S. stated that the more truthful their mailings were, the less money they made.

17. The award solicitations were written under the guise of multiple companies, including "Wynfel Advisory Services," "Global Reporting Advisors," "The Reporting Center," and "International Data Reporting Center," and contained what appeared to be hand-written signatures from a company officer. Some or all of these companies were either shell entities created by or for NOVIS and DENKBERG or were "DBAs" for an entity owned by NOVIS and DENKBERG, but they did not have any existence except on paper, e.g., "Wynfel Advisory Services" had no office and employees other than NOVIS and DENKBERG's office and employees, which were the same for all of these entities and DBA filings. This was done—often at the suggestion of their attorneys—so that there was a state business entity or DBA filing behind the prize notice's purported sender. Nevertheless, none of the prize notices disclosed that the purported business had no actual existence other than on paper; similarly, the purported company officials whose signatures appeared on the prize notices, e.g., "Artemis Poletski," the purported "President" of Wynfel Advisory Services, did not exist. None of the award solicitations identifies NOVIS, DENKBERG, or any of their co-conspirators as the sender; similarly, none of the prize-notice mailings discloses the relationship between the purportedly distinct companies. I have seen no evidence that NOVIS, DENKBERG, or any of their co-conspirators disclosed to their attorneys that these purported company officers were fictitious individuals. In addition to these uses of shell entities, DBA filings, and fictitious corporate officers to conceal their identities, NOVIS and DENKBERG made extensive use of P.O. boxes, which served to conceal their physical location. In my training and experience, such uses of shell companies, DBA filings, and P.O. boxes are hallmarks of mass-mailing fraud schemes.

18.     When NOVIS and DENKBERG invoked the advice of counsel defense and waived privilege in February 2021, the prosecution team was for the first time able to review attorney-client correspondence found during the executions of search warrants. In addition, in late May 2021 the prosecution team received a digital production from a law firm that NOVIS and DENKBERG employed in the course of their scheme—this production is believed to be the equivalent of approximately two standard file boxes of paper. Initial review of these attorney-client materials remains ongoing, but just the search warrant materials shows there appear to be thousands of communications over an approximate 15-year period between NOVIS, DENKBERG, and their counsel. While an exact number is not known, the prosecution team recently produced a compact disc to at the request of defense counsel and containing approximately 11,000 individual files, each representing a piece of attorney-client correspondence seized during search warrant executions. It is believed that these thousands of communications include duplicates, such as by virtue of a given e-mail appearing on multiple computers seized during the execution of a search warrant at NOVIS and DENKBERG's office location in September 2016.

19.     Review of these materials to-date reveals that NOVIS and DENKBERG hired attorneys to review their mailings. Given the length of the conspiracy and the volume of material that the prosecution team was not able to begin to review until recently, it is not yet known whether every single mailing was reviewed, but the prosecution team is operating under this assumption. Several of NOVIS and DENKBERG's former employees interviewed since February 2021 have relayed their impressions that because attorneys reviewed the mailings, they

were "legal." However, another witness, NOVIS and DENKBERG's former business partner J.S., felt that the legal opinions they were getting were worthless. J.S. attended law school in the 1990s and has a law degree; at one time, he was licensed to practice law, although he does not currently possess a law license. J.S. also said that their prize-notice solicitations were intended to make it "less clear" that what victims were buying was a small booklet of sweepstakes information. To this point, J.S. said that a "plain vanilla" advertisement for a booklet of sweepstakes information would not have produced a sufficient volume of orders for them to remain profitable. J.S. left the conspiracy in or about 2012 in the wake of an administrative enforcement action by the U.S. Postal Service and U.S. Postal Inspectors.

20.  As a general matter, the attorney reviews of mailings worked as follows: the "creative" pieces—i.e., the draft solicitations, including graphic design elements—were sent to the attorney. The attorney would make suggestions for changes and send them back to NOVIS and DENKBERG. Sometimes there was a back-and-forth discussion about the edits. At the conclusion of the process, the final version would usually incorporate most of the attorneys' suggested changes, although to varying degrees. Many of the attorney communications to NOVIS and DENKBERG contain qualifications, to the effect that despite the attorney review, government entities may find the mailings to be in violation of the law, and that litigation outcomes were not guaranteed.

21.  I have not yet seen any evidence to indicate that NOVIS and DENKBERG shared their "mailing plans" with their attorneys or otherwise sought advice about them. These mailing plans served as the structure for the scheme. Under the mailing plans, a large mailing—often to

tens of thousands of potential victims—was used to identify vulnerable consumers who would make payments after receiving the mailings. This was referred to as a "front end" mailing. NOVIS and DENKBERG closely tracked responses to the front-end mailing, and, over the ensuing weeks, sent additional, targeted fraudulent prize notices to those who responded, as often as every other day for the duration of the "mailing plan." These follow-on mailings were referred to as the "back end" mailings. Virtually all of these "back end" mailings were sent by NOVIS and DENKBERG under color of different purported business names and bearing different signatures of purported officials, which deceived victims about the origins of the fraudulent prize notices. The structure of the "mailing plan" enabled NOVIS and DENKBERG to identify the most vulnerable consumers with the "front end" mailings; many of these victims were then defrauded repeatedly by the "back end" mailings.

22.     During the executions of search warrants in September 2016, Postal Inspectors retrieved a large quantity of victim complaints concerning NOVIS and DENKBERG's scheme, including a large quantity of such complaints stored in file folders at NOVIS and DENKBERG's office on Long Island, New York. I estimate that the number of complaints is in the thousands. I have reviewed many of these complaints. Despite the advice of counsel around the factual representations in the prize-notice solicitations, these complaints often relate the victim's puzzlement and frustration with the failure to receive the promised monetary prizes after they paid the fees requested in the prize-notice solicitation.

23.     I have examined the outsides of the **SUBJECT PARCELS** detained under the authority of the EDNY TRO, described above. Much of it consists of consumer and victim

responses to the fraudulent prize notices described herein—these are characterized by the preprinted reply envelopes that were included with the fraudulent prize notices, first-class postage, handwritten return addresses, and return-address stickers.  In addition, amongst the **SUBJECT PARCELS** are many return-mail fraudulent prize notices.  I recognize the names of the various purported businesses or the graphic design of the exterior envelope, having reviewed other fraudulent prize notices that were not in the form of unopened and undelivered U.S. mail.  I have also reviewed the post office box documentation and other records and evidence associated with NOVIS and DENKBERG's scheme, and I know that the post office boxes to which this mail was addressed were used in furtherance of their scheme.  These post office boxes are listed above in paragraph 6.

## REQUEST TO SUBMIT WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

24.  I respectfully request, pursuant to Rules 4.1 and 41(d)(3) of the Federal Rules of Criminal Procedure, permission to communicate information to the Court by telephone in connection with this Application for a Search Warrant. I submit that Assistant U.S. Attorney Leslie A. Goemaat, an attorney for the United States, is capable of identifying my voice and telephone number for the Court.

## CONCLUSION

25.  I submit that based on the above-detailed facts, indicators reflected regarding the **SUBJECT PARCELS** described herein, and based upon my training and experience, I believe there is probable cause that the **SUBJECT PARCELS** contain evidence or instrumentalities of

violations of Title 18, U.S.C. Sections 1341 (mail fraud), 1342 (fraud using fictitious name or address), 1343 (wire fraud), and 1349 (conspiracy to commit mail fraud).

                                                    Respectfully submitted,

                                                    Nichole Rodriguez
                                                    United States Postal Inspector

Subscribed and sworn pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) on July 22, 2021.

_____
HONORABLE G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE

14